**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CONSOLIDATED DRESS CARRIERS, INC., Greenberg's Express, Inc., GRG Delivery, Inc., Clothing Carriers Corp., Dynamic Delivery Corp., JHT Leasing Corp., and Trucking Personnel, Inc., Respondent.**

No. 20, Docket 82–4032.

United States Court of Appeals, Second Circuit.

Argued Aug. 30, 1982.

Decided Nov. 19, 1982.

---

Allison W. Brown, Jr., N.L.R.B., Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Abby Propis Simms, N.L.R.B., Washington, D.C., of counsel), for petitioner.

Herbert Burstein, New York City (Zelby & Burstein, New York City, of counsel), for respondent.

Before KEARSE, CARDAMONE and WINTER, Circuit Judges.

RALPH K. WINTER, Circuit Judge:

■ Petitioner National Labor Relations Board ("Board") requests enforcement of its order, issued December 10, 1981, affirming the Administrative Law Judge's ("ALJ") decision and adopting his recommendation that the Respondent employer be ordered to reinstate striking employees with back pay. While the employer vigorously contests the underlying facts, we find, with one exception, the Board's decision to

be supported by the record. A detailed discussion is thus unnecessary. The employees embarked on an economic strike but, before they were permanently replaced, made unconditional requests to return to work which the employer refused. The failure to accept these offers justifies the Board's order of reinstatement with back pay. *N.L.R.B. v. Independent Association of Steel Fabricators,* 582 F.2d 135, 152–53 (2d Cir.1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979).

■ Our disagreement with the Board concerns the following event. Some time after the initial refusal to rehire the strikers, the employer sent mailgrams or telegrams to 53 of the 66 striking employees, offering them reinstatement. Although the exact message varied somewhat, each telegram or mailgram directed the employee to report for work the following day.[1] The Board concluded that the telegrams and mailgrams did not constitute valid offers of reinstatement because they did not give the employees a reasonable time to consider whether to accept. While we agree with the Board that an offer of reinstatement is not valid unless "it affords the offeree a reasonable period of time to consider it," *N.L.R.B. v. Murray Products, Inc.,* 584 F.2d 934, 940 (9th Cir.1978), the notices in question offered work the next day but did not expressly state that the employee must appear then or not at all. The authorities cited by the Board either contain such an express statement or involve evidence as to the surrounding circumstances indicating that an immediate and irrevocable decision was required. *Murray Products, supra* (circumstances, including express oral statements by agents of the employer, indicated an immediate decision was required); *Penco Enterprises, Inc.,* 216 N.L.R.B. 734, 734–35 (1975) (offer expressly requiring employee to answer in one day); *Southern Household Products Co.,* 203 N.L.R.B. 881, 882 (1973)

---

1. Although the wording of the telegrams varied, their messages were substantially the same. For instance, one telegram dated October 18 at 2:27 p.m., stated, "Report to work at 141 West 35th Street New York City on Thursday October 19 at 8 A.M." Another, sent on Tuesday, September 19 at 12:13 p.m., read, "Report to work Wednesday morning." Still another said simply, "Report to work immediately."

(nine day period to decide whether to accept offer is reasonable). The decision here, however, was based solely on the language of the notices and did not take into account either the actual understanding of the employees or the actual practice of the employer. Indeed, when it was suggested at the hearing that evidence was available to show that employees who reported later than the time specified in the notices were nevertheless reinstated, the ALJ said that would be taken up in the back pay hearing, apparently in mitigation of damages.

Such evidence, however, undercuts the ALJ's finding as to the meaning of the notices, for it supports the view that the telegrams stated the earliest, rather than the latest, time at which reinstatement was available. Since the notices are facially ambiguous and the record is, in the words of counsel for the Board, "incomplete" as to the method by which work is assigned,[2] how the offer was actually understood by the workers, the actual practice of the employer as to employees who appeared after the time specified in the telegrams, and other relevant circumstances, the decision of the ALJ and the Board is not supported by the present record. We are not prepared to affirm a finding based solely on ambiguous language in the absence of evidence as to such circumstances.

The Board argues that the burden of persuasion is on the employer to show a valid offer of reinstatement and, thus, the deficiencies in the record call for enforcement of the order. While we agree that the employer has the burden of persuasion, we also believe that the inquiry as to the employees' actual understanding of the mailgrams is analogous to the question of whether an employee entitled to reinstatement and back pay incurred willful loss of earnings. In the latter case, we have held that while the ultimate burden of persuasion on the issue rests with the employer, the Board has an initial obligation to produce the employees to testify.[3] *N.L.R.B. v. Mastro Plastics Corp.*, 354 F.2d 170, 175–78 (2d Cir.1965), *cert. denied*, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966).

We remand, therefore, for a hearing on the circumstances surrounding the alleged offer of reinstatement.[4] Findings should be made both as to the understanding of the employees generally and as to the knowledge of particular employees of the practice, if any, of the employer of rehiring strikers who appeared later than the date mentioned in the offer. If the employees' understanding was that the offer remained open for a period of time or if they knew of a practice of rehiring after the specified date, the ALJ's finding cannot stand. Moreover, even if no such general understanding or knowledge existed, particular employees who received an offer and knew of the practice may not be awarded back pay for any period after learning of the employer's practice in rehiring strikers.

Since the Board must produce the employees to testify concerning their understanding of the offer of reinstatement, and that testimony is relevant to the amount of back pay particular employees are entitled to, the remaining issues can be decided in a single hearing.

Enforcement of the Board's order is granted to the extent indicated by this opinion and the case is remanded for proceedings consistent with it.

**2.** The nature of the industry has relevance to the meaning of an offer of reinstatement. If the offer is to fill a particular opening on a permanent basis, it might be inferred that the employer needed an answer within a particular time or would hire another. If employment is secured through a daily shape-up, an offer stating a single date may not require immediate acceptance since adequate numbers of employees may be otherwise available.

**3.** So far as we can determine from the papers submitted, only three employees testified.

**4.** The ALJ also stated that if the offers were ultimately determined to be valid, he would find as a fact that none of the mailgrams was received. While the three employees who testified denied receiving the mailgrams, the record contains confirmations from Western Union that the 53 were sent. While an isolated case of non-receipt is possible, the ALJ's generalized finding must be, and is, rejected out of hand.